963 So.2d 1210 (2007)
MAYOR AND BOARD OF ALDERMEN, City of Ridgeland, Mississippi, Shadowood/Wendover Homeowners' Association And Central Ridgeland Homeowners' Association, Appellants,
v.
The ESTATE OF M.A. LEWIS and Richard Wayne Parker, Appellees.
No. 2005-CC-00361-COA.
Court of Appeals of Mississippi.
May 1, 2007.
*1211 Jerry L. Mills, Carolyn B. Mills, James Gabriel, Cassandra Burney Walter, Ridgeland, attorneys for appellants.
Glenn Gates Taylor, Robert L. Goza, D. James Blackwood, Jr., Christy M. Sparks, Ridgeland, attorneys for appellee.
EN BANC.

ON MOTION FOR REHEARING
MYERS, P.J., for the Court.
¶ 1. The motion for rehearing is denied. The original opinion is withdrawn and this opinion is substituted therefor.
¶ 2. At issue in this case is the zoning of a fourteen-acre tract of land located on the corner of Lake Harbor Drive and Pear Orchard Road in Ridgeland, Mississippi. The Estate of M.A. Lewis and Richard Wayne Parker (Lewis-Parker) petitioned the Ridgeland Planning Commission to have this tract of land rezoned from a single-family residential classification (R-2) to a restricted commercial classification (C-1); however, this petition was denied. Lewis-Parker appealed the Commission's decision to deny the petition for rezoning to the Mayor and Board of Aldermen of *1212 the City of Ridgeland (Mayor and Board of Aldermen), but the petition was denied at this level, as well. On appeal to the Circuit Court of Madison County, the decision to deny the petition for rezoning was reversed.[1] The Mayor and Board of Aldermen, the Shadowood/Wendover Homeowners' Association, and Central Ridgeland Homeowners' Association (collectively referred to as the Mayor and Board of Aldermen), now appeal the circuit court's reversal, raising the following issues:
I. WHETHER THE CIRCUIT COURT SHOULD HAVE REVERSED THE DECISION OF THE MAYOR AND BOARD OF ALDERMEN TO DENY THE REZONING APPLICATION AS ARBITRARY, UNREASONABLE, CAPRICIOUS, AND NOT "FAIRLY DEBATABLE" WHERE THE APPLICANT FOR REZONING FAILED TO SHOW BY CLEAR AND CONVINCING EVIDENCE A CHANGE IN THE CHARACTER OF THE NEIGHBORHOOD OR A PUBLIC NEED FOR REZONING?
II. WHETHER THE CIRCUIT COURT SHOULD HAVE REVERSED THE DECISION OF THE MAYOR AND BOARD OF ALDERMEN TO DENY THE REZONING APPLICATION AS ARBITRARY, UNREASONABLE, CAPRICIOUS, AND NOT "FAIRLY DEBATABLE" WHERE THE CITY'S COMPREHENSIVE PLAN AND LAND USE MAP DESIGNATED THE SUBJECT PROPERTY FOR RESIDENTIAL USE?
III. WHETHER THE CIRCUIT COURT SUBSTITUTED ITS JUDGMENT FOR THE GOVERNING AUTHORITIES' IN MAKING A LEGISLATIVE DETERMINATION REGARDING A ZONING MATTER?
¶ 3. Finding a portion of the order of the circuit court to be in error, we reverse in part and render judgment in favor of the Mayor and Board of Aldermen.

STATEMENT OF FACTS
¶ 4. Beginning in early 1999, the Planning Commission began assessing and evaluating the City's Comprehensive Plan for the purpose of adopting a new zoning plan, scheduled to become effective July 1, 2000.[2] On October 25, 1999, Lewis-Parker petitioned the Planning Commission to rezone a parcel of property, located on the corner of Lake Harbor Drive and Pear Orchard Road, from its single-family residential (R-2) designation under the plan then in effect to a restricted commercial (C-1) designation under the proposed plan, with the intention of developing a professional office park. However, the Planning Commission voted unanimously to deny the request and the tract of land retained the R-2 classification.
¶ 5. On November 14, 2000, Lewis-Parker filed its petition to rezone the property *1213 at issue from R-2 to C-1 with the Mayor and Board of Aldermen. A public hearing on the petition was held on November 28, 2000, and continued on February 6, 2001. At the public hearing held on November 28, 2000, homeowners Cain Baskin, Elton Holloway, Darryl Smith, and David Stutt all testified on their own behalf and on behalf of their respective homeowners' associations. The homeowners introduced neighborhood petitions and letters from other homeowners in opposition to the rezoning of the Lewis-Parker tract of land. Concerns against rezoning the parcel of property from a residential zone to a commercial zone were voiced by the homeowners regarding the potential for an increase in crime, the potential decrease of their home values, and the resulting increase in traffic and odors. Homeowner Holloway testified in opposition to the Lewis-Parker petition that there was "a lot" of commercial land available between Lake Harbor and County Line Road. Lewis-Parker presented testimony and exhibits in support of granting its petition regarding the changes that had occurred in nearby areas and in support of a public need for the property's commercialization. At the public hearing that was continued on February 6, 2001, homeowners Cassandra Walter and Alex Moore Ross testified on their own behalf and on behalf of their homeowner associations against the granting of the Lewis-Parker petition to rezone the tract of land to commercial classification. Lewis-Parker presented supplemental evidence in support of the petition for rezoning. At the close of this meeting, over Lewis-Parker's objections, the Mayor and Board of Aldermen adopted the new Comprehensive Plan and Zoning Ordinance, which once again designated the tract as residential. Lewis-Parker then perfected its appeal of the adoption of the Comprehensive Plan, and a hearing on this matter was held on April 17, 2001.
¶ 6. In the meantime, before the hearing was to take place on April 17, 2001, many compromises between Lewis-Parker and the homeowners were attempted, but few were had. At one such meeting taking place on March 1, 2001, Alderman Gerald Steen asked the parties of Lewis-Parker and their attorneys to leave the meeting, at which time he spoke ex parte with the homeowners. When the parties and representatives of Lewis-Parker reentered the meeting, they were informed that the homeowners had decided not to negotiate unless the Lewis-Parker petition for rezoning was withdrawn. Negotiations between Lewis-Parker and the homeowners, at this point, came to a standstill and the appeal was publicly heard on April 17, 2001.
¶ 7. At the hearing on April 17, 2001, arguments were presented once again by counsel for both Lewis-Parker and the surrounding neighborhood associations. Public comment in opposition to the Lewis-Parker request for rezoning was also accepted from homeowners Cassandra Walters, Ted Chambers, Darryl Smith and Elton Holloway on their own behalf and on behalf of their homeowners' associations. Lewis-Parker presented evidence of change and public need for commercial land and presented testimony from Urban Planning Consultant Jimmy Gouras, but the homeowners testified that there was ample commercial land available for development other than the Lewis-Parker parcel. Several aldermen and the mayor commented on the record regarding their positions to rezone the property. At the close of the meeting, the Mayor and Board of Aldermen voted six to one to deny Lewis-Parker's petition to rezone the tract of land from its designation as R-2 to C-1.
*1214 ¶ 8. Following the Mayor and Board of Aldermen's decision to deny Lewis-Parker's petition to rezone, the matter was appealed to the Circuit Court of Madison County. The circuit court reversed the decision of the Mayor and Board of Aldermen, finding the denial of the Lewis-Parker's petition to rezone the tract of land from its classification of R-2 to C-1 to be arbitrary, capricious, and unsupported by substantial evidence.

LEGAL ANALYSIS
¶ 9. Each of the issues presented on appeal are governed by the same standard of review; therefore, we address all three issues together. A circuit court sitting as an appellate court reviewing a zoning matter is limited in its judicial review and may not perform a de novo review. Broadacres, Inc. v. Hattiesburg, 489 So.2d 501, 503 (Miss.1986); Gillis v. City of McComb, 860 So.2d 833, 835(¶ 5) (Miss.Ct. App.2003). In reviewing a decision of the Mayor and Board of Aldermen, appellate courts "should respect such findings unless they are arbitrary, capricious, and unreasonable." Board of Aldermen v. Jenkins, 423 So.2d 1323, 1327-28 (Miss.1982). We are to review under the same standard assigned to circuit court review. Appellate courts are to give deference to the zoning decision of the local governing board, as the decision is to be presumed valid. Gillis, 860 So.2d at (¶ 5). The burden is upon the party seeking to set aside the decision to show that it was arbitrary, capricious, discriminatory, illegal, not supported by substantial evidence, and not fairly debatable. Id. at (¶ 6). The meaning of the term "fairly debatable" is "the antithesis of arbitrary and capricious." Id. It follows, then, that "[i]f a decision is one which can be considered fairly debatable, then it cannot be considered arbitrary or capricious." Id.
¶ 10. It is well-settled that a change in zoning on the subject property can only occur when there has been (1) a mistake in the original zoning, or (2) a substantial change in the character of the neighborhood and a public need for rezoning. Town of Florence v. Sea Lands, Ltd., 759 So.2d 1221, 1223-24(¶ 11) (Miss.2000). No one contends that there is a mistake in the original zoning of the tract at issue in this appeal. Thus, we center our review on whether it is fairly debatable or if substantial evidence supports the finding of the Mayor and Board of Aldermen that there was neither a substantial change in the character of the neighborhood so as to justify rezoning, nor a public need for rezoning the Lewis-Parker tract from its residential classification to a commercial classification. If substantial evidence exists as to either of these issues of the character of the neighborhood or the public need for rezoning, the decision of the circuit court must be reversed and the order of the Mayor and Board of Aldermen must be reinstated.
¶ 11. During the hearings, the Mayor and Board of Aldermen heard testimony and accepted exhibits from Lewis-Parker regarding whether there had been a substantial change in the character of the area surrounding the parcel of property. Lewis-Parker presented their support of the rezoning through the testimony and exhibits introduced by an urban planning expert regarding the recent commercialization of the surrounding areas. Of the seven rezoned tracts of nearby land Lewis-Parker points to in support of its petition, our review determines that only two of these tracts were changed from a residential classification to a commercial classification. As to the other parcels of property that Lewis-Parker rely upon to show a substantial change in the area, two were *1215 changed from a single-family residential classification to a townhouse classification,[3] and another two tracts of commercial classification were rezoned for heavier commercial use. The remaining tract example Lewis-Parker presents to show a substantial change in the area was changed from a residential classification to become a storm water relief channel. Thus, only two properties were shown by Lewis-Parker, in support of their position for rezoning, to have been transformed from residential to commercial classification in the recent years leading up to their petition. Based upon this evidence before them, the Mayor and Board of Aldermen found that the surrounding areas had not substantially changed in character so as to warrant a change in the classification of the Lewis-Parker tract of land. While there is no requisite number of rezoned tracts that must be proffered into evidence in order to show a substantial change in zoning in the neighborhood, we cannot say that it was error for the Mayor and Board of Aldermen to decline the petition for rezoning when Lewis-Parker was only able to present evidence of two properties' rezoning from residential to commercial. Thus, we hold the circuit court in error in finding the decision of the Mayor and Board of Aldermen to be arbitrary and capricious.
¶ 12. A rezoning petitioner must show an existing public need for such rezoning exists, in addition to showing that a substantial change in the character of the neighborhood has occurred. Id. At the April 17, 2001 hearing, testimony was presented by both parties regarding the public need for rezoning the Lewis-Parker tract of land. Evidence was first presented by Lewis-Parker's urban planning consultant regarding the area's traffic conditions, changing demographics, and surrounding commercial properties. Then, homeowners, representing themselves and their respective homeowners' associations, presented neighborhood petitions and testified in strong opposition to any redesignation of the Lewis-Parker property. Homeowners Cassandra Walters, Ted Chambers, Darryl Smith and Elton Holloway on their own behalf and on behalf of their homeowners associations testified that a public need for rezoning the Lewis-Parker property did not exist. Walters testified that "[i]f anyone opens their eyes and looks out the window there are ample vacant commercially zoned lots in the vicinity of the [Lewis-Parker] property." Holloway pointed out other commercially zoned properties located in the City of Ridgeland, testifying that there was "plenty" of other available commercial property. Also introduced as an exhibit before the Mayor and Board of Aldermen was the City of Ridgeland Comprehensive Use Plan, as adopted in July of 2000, which states, "[t]here is ample land within the current city limits and study areas to satisfy [future commercial] needs, much of which is already zoned for these purposes."[4] At the close of the hearing, the Mayor and Board of Aldermen sided with the homeowners in opposition to the rezoning.
¶ 13. When assessing the weight that may be given to public opposition to a *1216 petition for rezoning, we look for guidance from the Mississippi Supreme Court. In the case of Mayor & Commissioners of Jackson v. Wheatley Place, Inc., 468 So.2d 81, 83 (Miss.1985), our supreme court held that substantial weight could be given to the concerns of its citizenry in determining whether a public need exists for rezoning. The court stated:
It should also be borne in mind, however, that while a duly enacted comprehensive zoning ordinance is not a true protective covenants agreement, it bears some analogy.
Purchasers of small tracts of land invest a substantial portion of their entire lifetime earnings, relying upon a zoning ordinance. Without the assurance of the zoning ordinance, such investments would not be made. On this small area they build their homes, where they expect to spend the most peaceful, restful and enjoyable hours of the day.
Zoning ordinances curb the exodus of city workers to a lot in the distant countryside. Indeed, the protection of zoning ordinances in municipalities, as opposed to no zoning in most county areas, encourage the choice of a city lot rather than a country lot for a home in the first instance. Zoning ordinances make city property more attractive to the prudent investor.
In the absence of agreement between all interested parties, an amendment to a zoning ordinance is not meant to be easy. Otherwise, it would be a meaningless scrap of paper. As former Justice Robertson noted in City of Jackson v. Wilson, 195 So.2d 470 (Miss.[1966]), at 473:
Homeowners are the backbone of any community. They take pride in developing and maintaining attractive homes and yards, and anything that discourages this wholesome attitude on their part hurts the community.
Wheatley Place, 468 So.2d at 83. Undoubtedly, the Mayor and Board of Aldermen gave significant weight to the testimony of the concerned homeowners regarding the rezoning of the nearby Lewis-Parker property from the residential to the commercial classification. We cannot say that giving such weight to the homeowners' testimony regarding their opposition to a nearby rezoning is error.
¶ 14. Finding that the issues presented by the Lewis-Parker petition to rezone to be fairly debatable, and finding no evidence in the record that the decision to deny the petition was arbitrary, capricious, or unsupported by substantial evidence, we hold that the ruling of the Madison County Circuit Court overreached the applicable standard of appellate review and must be reversed. The Mayor and Board of Aldermen are better situated than are the appellate courts to determine the zoning needs of their city and where the decision is not clearly arbitrary, capricious, or unsupported by substantial evidence, and the issues fairly debatable, we decline to substitute our judgment for that of the local governing body. Accordingly, the decision of the Mayor and Board of Aldermen denying the Lewis-Parker petition for rezoning is reinstated.
¶ 15. THE JUDGMENT OF THE CIRCUIT COURT OF MADISON COUNTY IS REVERSED AND RENDERED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEES.
KING, C.J., LEE, P.J., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR. CARLTON, J., NOT PARTICIPATING.
NOTES
[1] We note that the circuit court's order addressed two issues outside the subject of the issues of this appeal. In addition to addressing the issue of this appeal, the circuit court also ordered the rezoning of municipality-owned property, the Longmeadow Relief Channel and the Storm Detention Area, from a residential zone to a zone for a stormwater relief channel and drainage system. Further, the circuit court ordered that the 2000 Comprehensive Plan be reversed or, in the alternative, corrected consistent with the order. Because these two issues are not appealed, we are without jurisdiction to decide the correctness of the circuit court's ruling.
[2] The City of Ridgeland adopts a new Comprehensive Plan pursuant to Mississippi Code Annotated sections 17-1-1 through 17-1-39 (Rev.2003), approximately every ten years.
[3] One of the rezoned tracts that was changed from the single-family residential designation to the townhouse residential designation, however, actually developed and remained under the classification of single-family residential.
[4] We note, however, that the 2000 Comprehensive Use Plan also acknowledges that additional commercial acreage will be needed in the future.