ROBERTS, J.,
 

 for the Court.
 

 ¶[ 1. Developers, J.W. “Johnny” McAr-thur and Kenney Properties, Inc. (Kenney Properties), appealed an action of the City of Hattiesburg, Mississippi (the City), which denied the developers’ petition to rezone a 29.63 acre parcel of land (subject property) from R-1B, single-family residential, to R-4, high-density residential. The Forrest County Circuit Court reversed the decision of the Hattiesburg City Council (city council), permitting the rezoning of the subject property. The City filed its notice of appeal to this Court contending that the circuit court reviewed the legislative decision de novo, thereby applying the wrong legal standard and improperly substituting its opinion for that of the city council. Conversely, McArthur and Kenney Properties contend that the circuit court applied the proper legal standard of review, and the only issue before this Court is whether the circuit court correctly found that there was no evidence to support the city council’s denial of the zoning petition in question. We find that the circuit court applied the appropriate standard, but erred in its holding. After a thorough review of the record, we find that the issue before the City of Hattiesburg was “fairly debatable,” and its ruling was not arbitrary nor capricious. Accordingly, we reverse the judgment of the circuit court and render judgment reinstating the decision of the city council.
 

 FACTS
 

 ¶ 2. Hattiesburg resident McArthur and North Carolina developer Kenney Properties filed an application request for rezoning with the City of Hattiesburg on May 16, 2007, requesting that approximately thirty acres of land, owned by McArthur, be rezoned from R-1B, single-family residential, to R-4, high-density residential. The proposed project for the parcel of land is a “luxury student housing project.” In other words, McArthur and Kenney Properties desire to build a 444-unit apartment complex.
 

 ¶ 3. McArthur’s and Kenney Properties’ plan was reviewed by the site review committee for the Hattiesburg Planning Department, and subsequent to the review, the application for rezoning was scheduled for a public hearing before the Hatties-burg Planning Commission (planning commission) on June 6, 2007. At that hearing, the application was tabled until July 5, 2007, at which time it was reconsidered. By a four-to-one vote, the planning commission recommended that the rezoning application be approved. Dissatisfied by the planning commission’s recommendation, Hattiesburg residents Hilda Perrott, Charles Holt, and Robert Walters appealed the planning commission’s decision to approve the petition filed by Kenney Prop
 
 *370
 
 erties on behalf of McArthur. In response, McArthur petitioned the City to approve the planning commission’s recommendation. All four persons requested a public hearing before the city council, which was held on August 6, 2007. Many area residents were present at the meeting. At the public hearing, the residents presented a petition to the City with approximately 288 signatures of persons opposing the zoning change, and the attendees were given an opportunity to voice their concerns about rezoning the area. McArthur and Kenney Properties reintroduced the evidence that was presented to the planning commission in support of rezoning, as well as a letter from an engineer employed by Neel-Schaffer, Inc. (Neel-Schaffer), which had been hired by Kenney Properties to perform a traffic-impact analysis. Following consideration of the evidence presented and discussion by the city council, the council voted four to zero to deny McArthur’s and Kenney Properties’ petition to rezone the subject property.
 

 ¶4. McArthur and Kenney Properties filed a bill of exceptions in the Forrest County Circuit Court appealing the city council’s decision. Judge Robert Helfrich recused himself, and the supreme court appointed Honorable Roger T. Clark to preside over the appeal. Judge Clark had presided over a rezoning dispute in Hat-tiesburg two years earlier; that case involved land situated on Beverly Hills Road, which is the same road involved in the instant case. In the earlier case, Judge Clark ruled that the City had acted arbitrarily and capriciously in denying a requested zoning change at the intersection of Beverly Hills Road, West 7th Street, and West 4th Streei/North 38th Avenue. The intersection and general area is a few hundred feet south of the McArthur property at issue in the case at bar.
 
 [1]
 

 ¶ 5. Returning to the dispute involved in the instant case, Judge Clark, once again, determined that: the character of the neighborhood had changed; there was a public need to justify rezoning; and the City’s denial of McArthur’s and Kenney Properties’ application for rezoning was arbitrary and capricious, rather than fairly debatable. The circuit court reversed the city council’s decision and ordered that the property be rezoned from R-1B, single-family residential, to R-4, multi-family residential. The City filed a timely appeal raising the issue stated above.
 

 STANDARD OF REVIEW
 

 ¶ 6. An appellate court’s standard of review in zoning matters is well settled:
 

 The classification of property for zoning purposes is a legislative rather than a judicial matter. The order of the governing body may not be set aside unless it is clearly shown to be arbitrary, capricious, discriminatory, or is illegal, or without a substantial evidentiary basis. The action of the [bjoard of [supervisors in enacting or amending an ordinance, or its action of rezoning, carries a presumption of validity, casting the bur
 
 *371
 
 den of proof upon the individual or other entity asserting its invalidity. On appeal,] we cannot substitute our judgment as to the wisdom or soundness of the [bjoard’s action. We have stated that where the point in controversy is “fairly debatable,” we have no authority to disturb the action of the zoning authority.
 

 Childs v. Hancock County Bd. of Supervisors,
 
 1 So.3d 855, 859(¶ 12) (Miss.2009) (quoting
 
 Faircloth v. Lyles,
 
 592 So.2d 941, 943 (Miss.1991)). “‘Fairly debatable’ is the antithesis of arbitrary and capricious.”
 
 Id.
 
 (citation omitted).
 

 ANALYSIS
 

 WHETHER THE CITY COUNCIL’S DECISION TO DENY REZONING WAS ARBITRARY AND CAPRICIOUS
 

 ¶ 7. Before an application for rezoning should be approved, the “applicant seeking rezoning must prove by clear and convincing evidence either that: (1) there was a mistake in the original zoning, or (2) the character of the neighborhood has changed to such an extent as to justify rezoning and that a public need exists for rezoning.”
 
 Id.
 
 at 859-60(¶ 13) (citation omitted). McArthur and Kenney Properties do not contend that there was a mistake in the City’s original 1988-89 comprehensive zoning plan, so only the second prong of the analysis was a relevant issue before the city council. Not surprisingly, the parties vigorously disagree about the amount of change in the subject area, as well as a public need.
 

 ¶ 8. To begin, we will consider the issue raised and thoroughly addressed in the parties’ briefs regarding whether the planning commission initially recommended to the city council that the subject property be rezoned. McArthur and Kenney Properties contend that Lisa Reid, with the planning commission, stated that the planning commission recommended the change, but she later denied that the planning commission made such recommendations. On appeal to the circuit court, Mc-Arthur and Kenney Properties made a motion to the circuit court to supplement the minutes of the planning commission meeting to prove that a recommendation had been made by the planning commission to rezone the property. The City argues extensively that the consideration of this motion and the testimony given related to this motion was paramount to a de novo review by the circuit court.
 
 [2]
 
 We find that both parties’ arguments are without merit.
 

 ¶ 9. First, it is clear from the record that the circuit court acknowledged the correct legal standard to apply when reviewing a decision of the city council. Furthermore, the circuit court denied Mc-Arthur’s and Kenney Properties’ motion to supplement the record, finding that the affidavits presented and testimony given, including testimony by Reid, supported that the planning commission did not recommend zoning changes. Rather, the circuit court held that the information provided by the planning commission was “more of a finding than a recommendation.” Second, it is irrelevant whether the planning commission initially recommended the change in zoning. The city council is not obligated to adopt the planning commission’s recommendation. The planning
 
 *372
 
 commission “does not have the authority to approve or disapprove a zoning change request, but acts merely as an advisory body to the board of supervisors.”
 
 Byram 3 Dev., Inc. v. Hinds County Bd. of Supervisors,
 
 760 So.2d 841, 843(¶5) (Miss.Ct.App.2000) (citing
 
 City of Jackson v. Sheppard Investment Co.,
 
 185 So.2d 675, 676 (Miss.1966)). “An appeal from a decision of the board of supervisors [or city council] on a zoning matter is strictly limited to the record of what occurred before the [city council] as contained in the bill of exceptions.”
 
 Id.
 
 (citation omitted). Accordingly, whether or not the planning commission or one of its employees initially recommended a zoning change is not outcome determinative; it was merely a recommendation.
 

 ¶ 10. McArthur and Kenney Properties argue extensively that they presented “overwhelming” evidence to the planning commission and the city council, and they further argue that the City failed to contradict, challenge, or refute the evidence. We disagree, and we now briefly address the evidence that was presented to the city council.
 
 [3]
 

 A. Petitions and Various Attachments
 

 ¶ 11. The city council was presented with signed petitions by both the proponents and the opponents of the zoning change. The opponents presented 288 signatures of area residents opposing the zoning change.
 
 [4]
 
 Many of the opponents were residents of the Highland Neighborhood, which is located across the street from the subject property at issue. Likewise, but in a much smaller showing, McArthur and Kenney Properties presented signed statements by three or four property owners located adjacent to the subject property, which supported the zoning change. As stated, many of the opponents attended the city council meeting, and they were given an opportunity to voice their opposition. McArthur and Kenney Properties now state that although the opponents “expressed their disapproval [with] the zoning request, [they] offered no real evidence against the petition.” The record indicates that the opponents stated legitimate concerns.
 

 ¶ 12. Among other things, the opponents spoke about their concerns over increased traffic congestion, a possible increase in crime, and their desire for the area to remain a single-family residential area. In support of it remaining a single-family residential area, they argue that was the type of property they had invested in and would not have purchased the property, if they had known that it would be changing. The City was well within its discretion to give credence to the opponents’ views. We have previously held that giving substantial weight to homeowners’ testimonies regarding opposition to a nearby zoning change is not error.
 
 Mayor and Board of Aldermen v. Estate of Lewis,
 
 963 So.2d 1210, 1216 (¶ 13) (Miss.Ct.App.2007).
 

 ¶ 13. The rationale behind this view is as follows:
 

 It should also be borne in mind, however, that while a duly enacted comprehensive zoning ordinance is not a true protective covenants agreement, it bears some analogy.
 

 
 *373
 
 Purchasers of small tracts of land invest a substantial portion of their entire lifetime earnings, relying upon a zoning ordinance. Without the assurance of the zoning ordinance, such investments would not be made. On this small area they build their homes, where they expect to spend the most peaceful, restful and enjoyable hours of the day.
 

 Zoning ordinances curb the exodus of city workers to a lot in the distant countryside. Indeed, the protection of zoning ordinances in municipalities, as opposed to no zoning in most county areas, encourage the choice of a city lot rather than a country lot for a home in the first instance. Zoning ordinances make city property more attractive to the prudent investor.
 

 In the absence of agreement between all interested parties, an amendment to a zoning ordinance is not meant to be easy. Otherwise, it would be a meaningless scrap of paper. As former Justice Robertson noted in
 
 City of Jackson v. Wilson,
 
 195 So.2d 470 (Miss.1966), at 473:
 

 Homeowners are the backbone of any community. They take pride in developing and maintaining attractive homes and yards, and anything that discourages this wholesome attitude on their part hurts the community.
 

 Estate of Lewis,
 
 963 So.2d at 1216(¶ 13) (citing
 
 Mayor and Comm’rs of Jackson v. Wheatley Place, Inc.,
 
 468 So.2d 81, 83 (Miss.1985)). The homeowner’s concerns and objections were a valid consideration before the city council.
 

 B. Zoning and Land Use Maps,
 
 As
 
 Well
 
 As
 
 Zoning Changes Over The Past Two Decades
 

 ¶ 14. The city council was presented with multiple maps reflecting the subject area, as well as zoning trends in the area over the past two decades. McArthur and Kenney Properties assert that these maps and zoning-change summaries support that there has been a substantial change in the area. However, the City notes that not all of the changes have been from a lower-density residential zone to a higher-density residential zone. The City is correct.
 

 ¶ 15. A review of the record and the zoning summaries reveal that there were eight zoning changes during the 1990s, and only two of them changed from a business zone to a high-density residential area. Between January 1, 2000, and July 2, 2007, there were eight zoning changes requested, and four of the eight rezonings were from a lower-density multi-family use to a higher-density multi-family use. One of the four zoning changes resulted from the disputed rezoning petition in the
 
 Foundation Development
 
 case two years prior. Undoubtedly, the area surrounding the Hillside Neighborhood and Beverly Hills Road includes a variety of businesses, apartments, and neighborhoods of single-family residences. However, the City was presented with evidence that did not fully support McArthur’s and Kenney Properties’ assertion that the area was changing to higher-density zoning, as several of the changes over the past two decades resulted in fewer residences in the area.
 

 C. Information Regarding Kenney Properties, Marketing Research, the Anticipated Growth of the University of Southern Mississippi, and the Need for More Apartments
 

 ¶ 16. McArthur and Kenney Properties have presented a voluminous amount of information to the planning commission, the city council, and to this Court. However, the City correctly notes that much of it — over one hundred pages — is self-serving sales advertisements, articles about the developer, and letters of recommendation
 
 *374
 
 for Steve Kenney with Kenney Properties from various lenders and business acquaintances. If the decision before the city council was whether to accept Kenney Properties as an accomplished developer, perhaps the issue may not have been “fairly debatable.” However, that was not the issue before the city council. Included in the evidence presented by McArthur and Kenney Properties were various newspaper articles and other public information concerning the growth of University of Southern Mississippi (USM) and the need for additional housing in the area. The City also presented evidence. We decline to address the majority of the presented information, but we will recognize some significant facts that the city council was presented with by both parties, in order to demonstrate that the issue before the city council was “fairly debatable.”
 

 ¶ 17. In support of their argument, Mc-Arthur and Kenney Properties presented the city council with a newspaper article from the June 19, 2006, edition of the Hattiesburg American, which stated that there were five major projects ongoing in Hattiesburg that would add 1,200 apartment units to the City’s inventory. The article discussed the need for apartments and the “booming” apartment business, and it also stated that the expansion or growth was due to military expansion, Hurricane Katrina, and the recently enacted Gulf Opportunity Zone Act that provided tax breaks for new developments. However, the article also addressed the potential problem of over saturation of apartments in the area once the influx of persons from Hurricane Katrina declined. The article stated:
 

 But adding thousands of units could over saturate the market, especially with fewer troops coming to Camp Shelby for training and people returning to then-homes in the hurricane zones.... There’s always a limit, and you can overbuild, says Alan Levow, whose Georgia-based company Foundation is in the planning stages for a 210-unit complex along Beverly Hills Drive.
 
 [5]
 
 We saw this in Florida. Properties went from 105 percent occupied and six months later everybody packed up and left.
 

 (Internal quotation omitted). Although McArthur and Kenney Properties choose to emphasize only the newspaper comments in support of their ambition, the City was within its discretion to consider the possibility of an overexpansion of mul-ti-family residences within the area.
 

 ¶ 18. Also, evidence was presented that USM is actively involved in renovating its dormitories, as well as adding new ones. McArthur and Kenney Properties presented evidence to the city council that USM’s strategic growth plan was for its enrollment to increase by five percent between 2005 and 2008. However, USM’s enrollment has actually declined 1.8%. The City recognizes that this is a low percentage, but nonetheless, it verified that USM has not experienced its anticipated growth. Therefore, it is a plausible argument that there is not the need for rapid apartment development within the area of USM’s campus, as McArthur and Kenney Properties aggressively argue. Additionally, evidence has been presented to support that Hattiesburg can only absorb 167 new apartments each year, and as stated, there was evidence that there were currently 1,200 new apartments being constructed in Hattiesburg.
 

 
 *375
 

 D. The Foundation Development Case
 

 ¶ 19. Both parties, and the circuit court in its opinion, address, at length, the
 
 Foundation Development
 
 case, wherein the circuit court previously ruled in favor of the developer in that case, thereby reversing the city council’s decision to deny rezoning of property on Beverly Hills Road. As mentioned, the earlier case virtually mirrors this one. It involves land in the same area, another apartment-complex development, the same opponents, and the same circuit court judge overruling the city council’s decision to deny rezoning. However, the City did not appeal the circuit court’s decision in the
 
 Foundation Development
 
 case. We are not constrained by the ruling of the circuit court in its
 
 Foundation Development
 
 ruling, and it does not serve as precedent in the instant case. Furthermore, the Foundation Development case was not binding precedent upon the city council when it was considering whether to rezone the McAr-thur property.
 
 [6]
 

 E. The Neel-Schaffer and Perrott Reports
 

 ¶ 20. McArthur and Kenney Properties hired Neel-Schaffer to prepare a report, which was done by land-use planner Patricia Brantley, to describe that the zoning change was consistent with the overall comprehensive land-use plan of the City, to demonstrate the general growth in the area, and to show that the new development would not negatively impact the traffic situation in the area. A report, in opposition, was prepared by rezoning opponent Hilda Perrott, which will be discussed further below.
 

 1. Neel-Schaffer report
 

 ¶ 21. As stated in the Neel-Schaffer report, “Neel-Schaffer, Inc.[,] was hired by The Kenney Companies, Inc.[,] of Raleigh North Carolina to conduct a traffic[-]impact analysis for the proposed development of Eagle’s Pointe Apartments.”
 
 [7]
 
 Indeed, Neel-Schaffer presented a twenty-five page report on this matter.
 
 [8]
 
 However, in summary, it was shown that the traffic congestion and poor level of service in the area of Beverly Hills Road, West 7th Street, West 4th Street, and North 38th Avenue is significant. As mentioned, this intersection is only a few hundred feet south of the McArthur property. The recommendation and conclusion section of the
 
 *376
 
 Neel-Schaffer report begins with the statement: “Development of the project site with 21 new buildings comprised of 444 dwelling units will only add slightly
 
 to an already significant traffic problem
 
 at the intersections of West 4th Street/ North 38th Avenue, and West 7th Street/Beverly Hills Road.” (Emphasis added). The report recommended that the City place turn lanes into the development, install a new traffic signal, and change the timing of the traffic signal at the intersection stated above to mitigate the traffic congestion. The traffic-congestion issue was contested in Perrott’s report and at the city council meeting.
 

 ¶22. The minutes from the August 6, 2007, city council meeting reflect that City Council President Bradley
 
 [9]
 
 stated that the City did not think that the intersection could handle the traffic generated by the new development. Councilman Bradley also questioned Brantley, who was previously a planner for the City, about whether she had predicted increased traffic problems when the city council was considering the Foundation Development issue. Brantley, who by that time worked for Neel-Schaffer, seemed to side-step the issue and simply stated that at the time the Foundation Development case was being decided, the planning staff did not make recommendations, and just as in this case, a traffic analysis had been done by Neel-Schaffer for Foundation Development.
 

 ¶ 23. Councilman Bradley expressed some of his concerns about the traffic problems in the area based upon his own perceptions. Councilman Bradley stated that “[h]e travels through [the intersection], [he] sees the traffic issues on [West] 7th, and [he wonders] what, if anything, [could] be done about the number of cars.” The response by Neel-Schaffer’s representative, Mike Essary, was that “there is no doubt that there will be increased traffic,” and Essary went on to outline the mitigation plans stated above. At the meeting, other council members also expressed their concerns about rezoning the area.
 

 ¶ 24. The city council was entitled to rely on its representatives’ personal perceptions of the area and its related problems.
 
 See Childs,
 
 1 So.3d at 860(¶ 16) (supreme court held that the board properly considered its own familiarity with the subject area when determining whether there was a need for rezoning);
 
 Bd. of Aldermen v. Conerly,
 
 509 So.2d 877, 885 (Miss.1987) (recognizing that informality attends rezoning proceedings, and board members may take into consideration their personal knowledge and familiarity with their community; such knowledge would be nearly impossible to ignore). We find from the record that the city council had a legitimate concern related to an already significant traffic problem in the area, and it was reasonable for the city council to determine that an apartment complex adding 444 units would greatly exacerbate an existing problem. McArthur and Kenney Properties clearly acknowledge that the apartments would be marketed to college students. The apartments would include units with as many as four bedrooms, and it is likely that each college-student resident would have his or her own car. Therefore, the additional 444 units, with multiple residents per unit, has the potential to add well over 1,000 cars traveling through that area multiple times per day. The city council’s consideration of this problem and its decision not to exacerbate the existing traffic problem was not arbitrary and capricious.
 

 2. Perrott Report
 

 ¶25. Perrott is the daughter of Hughlene Perrott (Hughlene). Hughlene
 
 *377
 
 is an area homeowner that initially contracted to sell her home to the developers, but she later asked to be released from the contract. Kenney Properties agreed to release Hughlene from the sales contract if she agreed not to oppose the rezoning. Perrott, who holds a Mississippi driver’s license and claims to own a residence on Beverly Hills Road, apparently took up the cause and has fought vigorously to prevent the rezoning of the area. Perrott presented a ten-page letter at the June 6, 2007, hearing, and she had expanded it to a twenty-five-page report by the time of the July 5, 2007, hearing. In the minutes of the city council meeting, the city council acknowledged the receipt of Perrott’s report.
 
 [10]
 

 ¶ 26. In their brief to this Court, McAr-thur and Kenney Properties do not contest Perrott’s qualifications as aggressively as they did to the circuit court, but in their brief to the circuit court, they refer to Perrott as a “gadfly,” “not a real professional,” and they claim that her report is “devoid of any real evidence.” We decline to comment about the parties’ dueling urban planners, but we note that McArthur and Kenney Properties have not disproved Perrott’s stated credentials. Furthermore, among other things, she relies on newspaper articles from the Hattiesburg American, USM facts and statistics, and the Neel-Sehaffer report, just as McAr-thur and Kenney Properties do. The city council was within its discretion to consider Perrott’s report. After thoroughly reviewing the record, we find that the evidence presented by McArthur and Kenney Properties alone was sufficient to indicate the decision before the city council was a fairly debatable issue.
 

 CONCLUSION
 

 ¶ 27. City councils are better situated than are the appellate courts to determine the zoning needs of their cities, and where the decision is not clearly arbitrary, capricious, or unsupported by substantial evidence, and the issues are fairly debatable, we will not substitute our judgment for that of a local governing body.
 
 Estate of Lewis,
 
 963 So.2d at 1216(¶ 14). Finding that the issues presented by Mc-Arthur’s and Kenney Properties’ petition to rezone were fairly debatable, and finding no evidence in the record that the decision to deny the petition was arbitrary, capricious, or unsupported by substantial evidence, we hold that the judgment of the Forrest County Circuit Court overreached the appropriate standard of appellate review and must be reversed. Accordingly, the decision of the city council denying McArthur’s and Kenney Properties’ petition for rezoning is reinstated.
 

 ¶ 28. THE JUDGMENT OF THE CIRCUIT COURT OF FORREST COUNTY IS REVERSED AND RENDERED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE AP-PELLEES.
 

 KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ISHEE AND MAXWELL, JJ., CONCUR. CARLTON, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.
 

 [1]
 

 . The prior case was styled
 
 Foundation Development v. City of Hattiesburg,
 
 Cause No. C105-0052. Judge Clark found that the character of the neighborhood had changed from single family to multi-family and that there was a public need for additional student housing in the area in question. He found that the City had failed to put forth evidence refuting that there had been a substantial change. The City did not appeal that ruling, and Foundation Development built an apartment complex with approximately 200 units on the same street at issue in the instant case. As mentioned, McArthur and Kenney Properties are seeking to rezone the McArthur property to build an apartment complex with 444 units.
 

 [2]
 

 . McArthur and Kenney Properties acknowledge that this issue is not outcome determinative in the instant appeal, but the matter was argued vigorously by both parties to the circuit court and to this Court. Therefore, we briefly address the matter to verify that the consideration of the motion and related testimony was not a matter that affects the decision of this Court in the instant case.
 

 [3]
 

 . Some of the items listed in the briefs are interrelated, so they will be combined.
 

 [4]
 

 . Although McArthur and Kenney Properties assert that some of the opponents were not from the immediate area of the proposed change, there has been no evidence placed in the record that refutes that most of the opponents were from the Highland Neighborhood/Beverly Hills Road area.
 

 [5]
 

 . It appears that Mr. Levow is the developer that waged the same battle as McArthur and Kenney Properties with the city council two years earlier in the
 
 Foundation Development
 
 case.
 

 [6]
 

 .In the opinion of the
 
 Foundation Development
 
 case, the circuit court opined that, other than Highland Neighborhood opponents speaking against rezoning at the public hearing before the city council, the opponents presented no expert testimony relating to such issues as neighborhood change and public need. As it is not before this Court, we do not address the circuit court’s evaluation of the evidence presented in the
 
 Foundation Development
 
 case. However, we are inclined to state that opponents to rezoning are not required to hire experts to demonstrate that an area has not substantially changed or that there is not a public need. We are cognizant of the fact that acquiring expert testimony is likely to be cost prohibitive to many people, and our laws do not require that such testimony be presented to our city councils in zoning disputes. Expert testimony is simply a tool that may be utilized by both proponents and opponents to zoning changes.
 

 [7]
 

 . "Eagle’s Pointe Apartments” is the name of McArthur's and Kenney Properties' proposed development.
 

 [8]
 

 . Additionally, Brantley prepared a multiple-page report about the land use and zoning trends in the area. The report also addressed matters other than just traffic issues. As we have already briefly addressed some of the zoning changes and trends in the area, we will not discuss them further, nor will we address all of the evidence presented in the record. We are of the opinion that the stated matters alone illustrate that the issue before the city council was "fairly debatable.”
 

 [9]
 

 . The city council minutes do not reflect Councilman Bradley's full name.
 

 [10]
 

 . Perrott states the she holds three graduate degrees in urban planning and development, including a Masters of Urban and Regional Planning from the University of New Orleans, LA. She grew up in the Beverly Hills Road area, and her husband works abroad, but she maintains a permanent address in Hatties-burg. At the public hearing, in response to allegations that she was not a resident of Hattiesburg, Mississippi, she presented her Mississippi driver's license.