# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2025-CA-00340-COA

**HAMAN CONSTRUCTION, LLC**                                      **APPELLANT**

**v.**

**MARSHALL COUNTY BOARD OF**                                       **APPELLEE**
**SUPERVISORS**

| | |
|---|---|
| DATE OF JUDGMENT: | 02/28/2025 |
| TRIAL JUDGE: | HON. JOHN KELLY LUTHER |
| COURT FROM WHICH APPEALED: | MARSHALL COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | LAUREN ELIZABETH WARD |
| | WILLIAM P. MYERS |
| | WILTON V. BYARS III |
| ATTORNEYS FOR APPELLEE: | LORI WHALEY SHAW |
| | AMANDA WHALEY SMITH |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | REVERSED AND RENDERED - 04/07/2026 |
| MOTION FOR REHEARING FILED: | |

**EN BANC.**

**LASSITTER ST. PÉ, J., FOR THE COURT:**

¶1.     Haman Construction (Haman) sought to build a convenience store and service station on a parcel of property it owned in Marshall County. When representatives tried to apply for a permit, they were told by zoning authorities that they would need to seek an amendment to the zoning ordinances in place at that time. Haman applied for an amendment, but during the hearings on their proposed amendment, Haman argued that the property at issue was already zoned for convenience store and service station use, so an amendment was not required. Both the Marshall County Planning Commission (the Commission) and the Board of Supervisors (the Board) denied the amendment based on the belief that a 2019 rezoning

by the previous owner had excluded convenience stores and service stations from the area. The circuit court affirmed.

¶2. We find the 2019 rezoning did not include an exclusion of convenience stores and service stations, and we hold that Haman was not required to seek an amendment of the zoning ordinances. Because the denial of Haman's petition was premised on an incorrect interpretation of the controlling ordinances, the denial was arbitrary and capricious. We therefore reverse and render.

## FACTS AND PROCEDURAL HISTORY

¶3. Haman purchased a seven-acre parcel of land from Mark Utley in 2021. In 2019, Utley approached the Commission to request a rezoning for the parcel. At that time, the property was zoned as a "Residential-Estate" (R-E) district, and Utley sought to have the property rezoned as "Commercial-2" (C-2).[1] During his presentation to the Commission, Utley stated his intent to develop the property with a commercial complex for offices, restaurants, and similar businesses. Utley said he would not use the property for a gas station or truck stop. Surrounding property owners present at the meeting voiced their approval of Utley's plan and his commitment not to build a gas station. The Commission "RESOLVED to send a positive recommendation to [recommend the zone change to the] Marshall County

---

[1] The permitted uses of C-2, which incorporated permitted uses of C-1, include "[r]etail establishments such as grocery, apparel, hardware, drug store and similar uses"; "[c]onvenience store"; and "[a]uto dealers, repair, service stations and similar uses." A retail truck stop center may be permitted by special exception.

2

Board of Supervisors for the rezoning."

¶4.　　The Board heard the Commission's recommendation at its next meeting. During the discussion period, Utley again stated that he would not "put in a truck stop or convenience store." At the end of the discussion, a supervisor "made a motion to uphold the decision rendered by the planning commission to allow the rezoning of the 7 acres as requested by Mr. Utley." The motion was seconded and approved by the Board members. The zoning map was updated to reflect that the seven-acre parcel had been rezoned from R-E to C-2.

¶5.　　Utley never moved forward with his proposed project and sold the property to Haman. Haman developed plans to build a convenience store with fuel pumps on the property. A representative sought information from the Marshall County planning office on the necessary permits and was informed by the zoning administrator that Haman would need to get a zoning amendment to allow fuel pumps on the property.

¶6.　　Haman submitted an application for an amendment to the Commission. Haman's application noted that the present zoning classification of the property was C-2 and that Haman's "Proposed Zoning Classification" was also C-2. The application asked, "What changed or changing conditions make the passage of this amendment necessary?" and Haman wrote, "Propose building of a c-store and strip mall with construction office." The application also asked, "What other circumstances justify the proposed change?" and Haman wrote, "Revise Zoning language to allow c-store with fuel."

¶7.　　The minutes of the Commission's May 2024 meeting state that Haman sought

3

"rezoning modifications . . . for removal of conditions/limitations from the current C-2 classification on the property to allow convenience store with fuel (or truck stop)." A commission member "informed" Haman and other Commission members "that when Mr. Utley got approved to rezone this property he was in agreement with the community that it wouldn't be a service station/convenience store/truck stop built on this property at any time and that's what was approved," and "due to the agreement with Mr. Utley," the Commission could not allow the amendment. The Commission "RESOLVED that the zoning modifications request from Haman Construction LLC for removal of the conditions/limitations from the current C-2 zoning classification to allow convenience store/truck stop . . . was denied due to the conditions/limitations put on the property and the opposition."

¶8.     Haman appealed the Commission's decision to the Marshall County Board of Supervisors. At a hearing before the Board, Haman argued that the 2019 zoning amendment, which changed the property's classification from R-E to C-2, did not include a restriction of convenience store and gas station use. Haman argued that the denial of the zoning amendment was improper and should be overturned but also argued that the Board should "allow [Haman] to proceed with developing that property pursuant to the permitted uses and the exceptions allowed by the Marshall County zoning ordinance."

¶9.     Board members stated that at the 2019 hearings, Utley promised the property would "never be a gas station" and that members of the public were against a gas station

development at that site. The Board attorney who was present stated that the minutes of the Commission's 2019 meeting also reflected Utley's statement that he would not build a gas station and that the minutes of the Board's July 2019 meeting also reflected discussion about Utley's promise not to build a gas station. The Board Attorney stated, "It's very reasonable to conclude that, that was a condition that the planning commission considered and then the board of supervisors considered when they agreed to accept the recommendation that the planning commission made." Board members stated again that the rezoning to C-2 was "an agreement with the community and Mr. Utley that he would not put any gas pumps."

¶10.    Another board member stated that Haman should have done his homework to see the restrictions on the property before he purchased it from Utley. Haman's attorney noted that the zoning map did not contain any restriction on the property and showed that the area was zoned C-2, and the zoning ordinances stated that under C-2, convenience stores and service stations were allowed. Haman's attorney argued that the maps and ordinances were what a landowner was permitted to rely on in making decisions about developing and purchasing property.

¶11.    Following discussion, a Board member moved "to go along with the zoning board," which was seconded, and voted in favor of by all members present. The minutes of the Board meeting reflect the above-recounted discussion and state that the motion was "to uphold the Planning Commission decision to deny removal of language from the previous zoning change."

¶12.    Haman appealed the decision to the circuit court. The parties provided briefs, and the circuit court heard argument. Haman argued that its intended use for the property was already allowed under C-2 and that the Board's interpretation of the conditions on C-2 property was inconsistent with the zoning ordinances. Haman asked the court to find that "it is permitted to proceed in developing its property pursuant to the C-2 District ordinance provisions without restriction or a zoning amendment." Haman also argued that the Board had not placed conditions on the property when it was rezoned in 2019 because the alleged restrictions "were discussed but were omitted from any formal resolution or ordinance affected for the subject property." The Board argued that the restrictions were properly placed on the property in 2019 and that application to remove them was not arbitrary and capricious.

¶13.    The circuit court found that the Board's discussion of Utley's promises not to develop the property as a gas station or convenience store was sufficient to place the restriction on the property because the "approval of the 2019 rezoning was contingent upon the conditions and restrictions Haman now [sought] to lift." The circuit court found that the Board's denial of the amendment was not arbitrary and capricious due to the "rationale behind the conditions and restrictions on the property."

¶14.    Haman appealed, arguing to this Court that the circuit court's order affirming the Board's denial was erroneous because the zoning ordinances already permitted Haman's intended use. Haman argues that a zoning amendment was not required because the Board

6

did not properly place conditions on the property in 2019, and any agreed-upon restrictions applied only to Utley, not Haman.

¶15. After review, we find that because the ordinances for C-2 were not amended in 2019, Haman was not required to seek amendment in order to receive a permit for the convenience store and fuel station. The Board's action was based on an incorrect interpretation of the ordinances, and its decision was arbitrary and capricious.

**ANALYSIS**

¶16. At the outset, we address the appropriate standard of review for zoning enforcement decisions. In *Wheelan v. City of Gautier*, 332 So. 3d 851 (Miss. 2022), the Supreme Court held that "[t]he interpretation of zoning ordinances presents a question of law," and "the ultimate authority and responsibility to interpret the law, including statutes, rests with this Court." *Id.* at 856, 859 (¶¶17-18). *Wheelan* brought "our standard of review of local authorities' interpretations of zoning ordinances in line with our traditional and common law de novo standard when reviewing questions of law," and overruled prior cases "that established a standard of review deferential to local agencies on the pure questions of law presented in the interpretation of zoning ordinances." *Id.* at 856, 859 (¶¶16, 19).

¶17. The Supreme Court has applied this standard of review as recently as November 2025 in *Mohiuddin v. Jackson County*, 426 So. 3d 245 (Miss. 2025). The Supreme Court found that "the issues on appeal require a bifurcated standard of review. First, the interpretation of a zoning ordinance raises a question of law and requires a de novo review. Next, the

7

application of a zoning ordinance is subject to limited review, and a board's decision concerning the same will be upheld unless it is clearly arbitrary, capricious, discriminatory, illegal, or without a substantial evidentiary basis." *Id.* at 249 (¶¶7-8) (citation and quotation marks omitted).

¶18.    This Court followed *Wheelan*'s holding in *Avion Group Inc. v. City of Oxford*, 395 So. 3d 997 (Miss. Ct. App. 2024), when we reviewed de novo the City of Oxford's interpretation of its zoning ordinances. *Id.* at 1007 (¶31). That case guides our decision here.

¶19.    In *Avion*, Avion argued on appeal that the variance they originally sought from the city was not required under a proper interpretation of the code, while the City argued that Avion had waived any issue of code interpretation because the only issue before the board of supervisors and on appeal to the circuit court was the denial of a variance. *Id.* at 1006-07 (¶¶26, 29). We found that although Avion appealed the denial of a variance, it had "clearly stated" in its briefing that it was appealing the city's interpretation of the code and argued that no variance was necessary. *Id.* at 1008 (¶33). We held the issue had been properly preserved and reviewed de novo the interpretation of the ordinance. *Id.* at 1009 (¶36).

¶20.    We must do the same here. The circuit court's ruling focused on whether Haman had proved the need for an amendment and did not address Haman's secondary argument that an amendment to the ordinance was unnecessary and that the Board was misinterpreting its own ordinances. So the issue was presented to the circuit court and is preserved here. *See id.* at 1008 (¶33). A de novo review of the zoning ordinances reveals that the County's

8

interpretation of the ordinance—that a convenience store and fuel station were not allowed—is incorrect.

¶21.    Marshall County's alleged "restriction" prohibiting a gas station or convenience store was never adopted as part of the Board's official action, and the steps needed to amend an ordinance were not followed. While Utley, the prior owner, may have made such a representation during the hearing, and Utley's statement was noted as a comment during discussion, that statement was not incorporated into the motion (the action) approving the rezoning, nor was it otherwise reflected as an enforceable condition in the Board's minutes. Indeed, the minutes from the 2019 Board meeting merely state that the approved motion was "to uphold the decision rendered by the planning commission to allow the rezoning of the 7 acres as requested by Utley."

¶22.    The Commission's action was "to send a positive recommendation to [the Board] for the rezoning." The discussion outlined prior to the vote and official recommendation reflected the prior owner's request for the Commission to "consider rezoning [the property] from Residential-Estates (R-E) to Commercial-2 (C-2)." The discussion of the recommendation and plan by Utley was not part of the official resolution by the Commission and was not part of the official action of the Board, and the Board did not "request[] [the condition] be included or reflected in the minutes." *See* Miss. Code Ann. § 25-41-11 (Rev. 2024).

¶23.    As the Supreme Court recently reaffirmed, "public boards speak only through their

minutes and their actions are evidenced solely by entries on the minutes." *Hous. Auth. of Yazoo City v. Billings*, 404 So. 3d 1148, 1151 (¶18) (Miss. 2025) (quoting *Thompson v. Jones Cnty. Cmty. Hosp.*, 352 So. 2d 795, 796 (Miss. 1977)). Additionally, Mississippi Code Annotated section 25-41-11 requires that "minutes shall be kept of all meetings of a public body, whether in open or executive session . . . ." The minutes must contain a record of "members present and absent; the date, time and place of the meeting; *an accurate recording of any final actions taken at such meeting*; and a record, by individual member, of any votes taken; and any other information that the public body requests be included or reflected in the minutes." *Id.* (emphasis added).

¶24.    The Supreme Court has also held:

> The standard for complying with the minutes rule is as follows: Any public board in the State of Mississippi speaks and acts only through its minutes. And where a public board engages in business with another entity, no contract can be implied or presumed, it must be stated in express terms and recorded on the official minutes **and the action of the board** . . . .

*Miss. State Port Auth. at Gulfport v. Yilport Holding A.S.*, 416 So. 3d 83, 89-90 (¶25) (Miss. 2025) (emphasis added).

¶25.    In that case, the Supreme Court found that "the board minutes . . . do not [contain] any term or condition" relating to a contract and instead "merely reflect[ed] that the board approved a letter of intent for an operating agreement. It neither specifies which letter of intent was approved nor contains any information to enable a determination of the liabilities and obligations of the contracting parties." *Id.* at 93 (¶37). Because the contract's information

10

"was not properly spread upon the minutes of the Board," the contract was unenforceable. *Id.* at 94 (¶38). As the Court explained, this was significant because the minute rule exists to "allow[] members of the taxpaying public to consult a Board's minutes to see what was actually done. The importance of the public policy involved will be the overriding factor in such disputes even when the rule may work an apparent injustice." *Id.* at 92 (¶34) (citation omitted) (quoting *Wellness Inc. v. Pearl River Cnty. Hosp.*, 178 So. 3d 1287, 1293 (¶18) (Miss. 2015)).

¶26.   Statements made during discussion—even if recorded in the minutes—are not formal action. As stated *supra*, all terms, restrictions, and conditions must be "recorded on the official minutes **and** the action of the board." *Yilport*, 416 So. 3d at 90 (¶25) (emphasis added). This requirement clearly indicates that minutes of a meeting and action taken at that meeting are not the same, since the Supreme Court has held that *both* are required. Under section 25-41-11, part of the Open Meetings Act, discussion is not required to be placed in the minutes, only the formal action of the Board. The "action of the board" is a motion that is made, seconded, and approved. Because no restriction on C-2 use was included in the Board's action in 2019, none exists as a matter of law.[2]

---

[2] Although the dissent claims that no party has raised the issue regarding official action of the Board, Haman's brief does just that, arguing that "[a] board of supervisors can act only through its minutes," and that the 2019 minutes from the Commission and Board show "the restrictions were discussed but were omitted from any formal resolution or ordinance affected for the subject property. As such, those conditions did not become part of the rezoning for the subject property." Appellant's Brief at 13.

11

¶27. Even assuming the Board intended to impose such a restriction, it failed to follow its own ordinances to finalize and publish the restriction. Any limitation on permitted uses within a zoning classification must be formally adopted, reflected in the zoning map and applicable ordinances, and implemented with proper notice to the public. No such steps were taken here.

¶28. The 2019 minutes merely reference Utley's assurance that *he* would not build a convenience store if the area was rezoned. None of the zoning maps includes a restriction on C-2 usage, and there is no notation on the zoning ordinances showing that there is a restriction on C-2 usage.[3] Put simply, there was no way for Haman Construction to know of this so-called restriction, illustrating the necessity of the minutes rule and formalizing alleged zoning restrictions. Allowing the Board to enforce an unwritten, informal restriction would undermine the reliability of zoning classifications and the public's ability to rely on them. Developers and purchasers are entitled to look to the zoning map and ordinances—not to statements made at prior hearings—to determine permissible uses of property.

¶29. The dissent argues that the restrictions were "clear" to the Board, Utley (the former owner), and the citizens of Marshall County, but it does not address that the restrictions were

---

[3] There is a handwritten notation on the zoning ordinances noting that in December 2013, the Board voted to move "retail truck stop centers" from permitted C-2 uses to permitted by special exception. So it is not unprecedented for official changes in the ordinances to be noted on the ordinance directly. To the extent that Haman seeks to build a "truck stop," Haman must comply with the processes for seeking a special exception to C-2 regulations.

12

unknown to any person not present at the Commission or Board meetings in 2019. This argument helpfully illustrates the necessity of the minutes rule—so those not present at such meetings can have record notice of the zoning requirements. While the desires of local citizens may and should be considered when zoning decisions are made, objections stated during Board proceedings do not, standing alone, effectuate an amendment to a duly enacted ordinance. The law provides a defined process for amending zoning regulations, including public notice and formal modification of both the zoning ordinances and maps. That process was not followed here.

¶30. The Supreme Court has recognized that application of the minutes rule sometimes produces harsh results, but the Court "has . . . repeatedly provided the simple solution: if you deal with public boards, you must assure that your [restrictions] are recorded in the Board minutes." *Yilport*, 416 So. 3d at 92 (¶34).

¶31. Haman was erroneously required to seek a zoning amendment for a use that is already permitted within a C-2 classification. That requirement had no legal basis. A service station is an allowed use in C-2, subject only to compliance with applicable permitting requirements. No amendment to the zoning map was necessary.

¶32. The circuit court erred by concluding that the Board's denial of Haman's application was not arbitrary and capricious. "An action is arbitrary when it is done without adequately determining principle; not done according to reason or judgment, but depending upon the will alone[,] implying either a lack of understanding of or a disregard for the fundamental

13

nature of things." *Cleveland MHC LLC v. City of Richland*, 163 So. 3d 284, 289 (¶13) (Miss. 2015). "An act is capricious when it is done without reason, in a whimsical manner, implying either a lack of understanding of or a disregard for the surrounding facts and settled controlling principles." *Id.* Because the Board's denial was premised on, "without adequately determining," whether the ordinances required amendment and with "a lack of understanding or disregard" for how to properly amend zoning ordinances, the denial was arbitrary and capricious. The circuit court erred by affirming the denial.

**CONCLUSION**

¶33.    Because the decision denying Haman an (unnecessary) amendment was premised on an erroneous interpretation of zoning ordinances, and therefore was arbitrary and capricious, we reverse and render the circuit court's judgment. Haman may seek a building permit for the property, subject to the "necessary building-code requirements and zoning ordinances." *Tinseltown Cinema LLC v. City of Olive Branch*, 158 So. 3d 367, 373 (¶20) (Miss. Ct. App. 2015) (citing *Thompson v. Mayfield*, 204 So. 2d 878, 880 (Miss. 1967)).[4]

¶34.    In reaching this decision, we do not grant the developer "premature approval . . . for its desired use," as the dissent alleges. We do not diminish the deference owed to local boards, nor do we rewrite the zoning laws. Rather, we recognize that Marshall County's existing zoning ordinances expressly permit the use proposed on the (unnecessary) petition

---

[4] Although Haman requests an "order [from] this Court permitting it to develop a convenience store with fuel on the subject property," such relief is beyond the scope of our review.

14

to amend the ordinances—a convenience store with gas station—and that Marshall County may not read into their zoning ordinances any restrictions that were not formally and appropriately enacted by Board action.

¶35. **REVERSED AND RENDERED.**

**WILSON, P.J., WESTBROOKS, LAWRENCE, EMFINGER AND WEDDLE, JJ., CONCUR. McDONALD, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. McCARTY, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY CARLTON, P.J.; BARNES, C.J., AND McDONALD, J., JOIN IN PART.**

**McCARTY, J., DISSENTING:**

¶36. By giving the developer premature approval to build for its desired use, the majority elevates its decision-making over the legislative prerogative of the Board of Supervisors of Marshall County. In doing so, our Court bestows on one developer the permission to do exactly what the local citizenry fervently objected to and the Board of Supervisors forbade: build a healthy-sized strip mall with a truck stop nearby a residential neighborhood.

¶37. Everyone agrees the construction company never sought a building permit. If it had, and if its application was for a clearly permitted use, the company could have sought judicial enforcement of its right to such a permit. *See Tinseltown Cinema LLC v. City of Olive Branch*, 158 So. 3d 367, 373 (¶20) (Miss. Ct. App. 2015) (holding that zoning authorities such as a county or "[a] city do[] not have the discretion to deny a building permit when an applicant meets the necessary building-code requirements and zoning ordinances"). Indeed, our Supreme Court has even issued a writ of mandamus to allow the building of a church in

a residential zone when "[t]he existing zoning ordinance of the City of Jackson permit[ted] the construction of churches in A-1 residential districts" and the other requirements were met. *Thompson v. Mayfield*, 204 So. 2d 878, 878 (Miss. 1967).

¶38.    However, the developer did not seek a permit for any of these accepted uses. It is undisputed that the only action of record taken by the construction company before the Planning Commission and Board of Supervisors was an effort to amend the C-2 zone. The company simply did not support its rezoning application with the necessary evidence.

¶39.    Since the developer did not yet request a permit and one was not yet denied, this issue is not ripe for review. *See, e.g.*, *Conley v. State*, 790 So. 2d 773, 806 (¶132) (Miss. 2001) (finding an inmate's claim of unlawful penalty was "not ripe for review" and "[t]hese issues should be raised when and if" they actually arise); *Knox v. Alford*, 418 So. 3d 1280, 1282 n.1 (Miss. Ct. App. 2025) (an unpreserved issue is "not before us," and so any resulting discussion would be "dictum and not relevant for the purposes of this appeal"). This is the core reason why this case should be affirmed.

¶40.    But in the penumbra of this preserved issue, the majority divines another. Despite the fact that the Board of Supervisors clearly conditioned the prior rezoning on limited development that was not to include a gas station or convenience store, the majority has *sua sponte* reviewed the minutes of the Marshall County Board of Supervisors and found them wanting. It was quite clear to the Board what limitations were placed on the property, certainly clear to the citizenry and local residents who demanded them, and *quite clear to the*

16

*developer—who asked for the property to be rezoned*.

¶41. The record reveals the property had been rezoned only due to significant concessions to the local community. The developer knew this—its engineer appeared before the planning commission stating that "they are trying to get the restrictions lifted so they can allow **a convenience store with gas station and 15 spaces for truck stop**." (Emphasis added).

¶42. But a member of the Commission "informed [the engineer for the developer] and the Commission that when Mr. Utley got approved to rezone this property he was in agreement with the community that it wouldn't be a service station/convenience store/truck stop built on this property at any time[.]" The Commission also stated it "cannot lift that restriction to allow convenience store/truck stop due to the agreement," and "it would be bad for the neighborhood."

¶43. The original owner of the property was also present at the hearing and stated she "is opposed to this request because she sold this property with restrictions that no convenience store/truck stop would be built on this property[.]"

¶44. Even though the majority concludes that these restrictions were not an "official action of the Board," this precise argument and interpretation of a de novo standard of review was never advanced by either party, let alone ruled on by the trial court. Just as we are not to issue advisory opinions on issues not yet ripe for review, we also should adhere to the rule that "a trial judge will not be found in error on a matter not presented to the trial court for a decision." *Greer v. Key*, No. 2024-CA-01393-SCT, 2026 WL 470883, at *2 (¶10) (Miss.

17

Feb. 19, 2026).

¶45.   Nor should we create a new argument for one party over another, since "we will not act as an advocate for one party to an appeal." *Alexander v. Pitts*, 229 So. 3d 1073, 1076 (¶11) (Miss. Ct. App. 2017). There's a simple reason why: it's the role of the attorneys to advance the interests of their clients, not ours—for our role is to decide the issues based upon the law and the arguments mustered by counsel before us. Our docket is quite full enough without us brainstorming for one side or the other what we would have done if we had handled the matter. "Creating an issue never presented is an act of advocacy and is cautiously applied only in cases in which we have a firm conviction that a manifest miscarriage of justice has occurred." *Nuckolls v. State*, 179 So. 3d 1046, 1053 (¶28) (Miss. 2015) (Randolph, P.J., concurring in part and dissenting in part).

¶46.   This is simply not one of those cases.  The construction company chose to seek an amendment to the zoning map, not a building permit.  The record does not contain the reason why, and we are to decide only those issues contained in the record.  *See generally* MRAP 28(a)(7) (requiring appellate arguments to contain the "citations to the authorities, statutes, and parts of the record relied on").

¶47.   The majority has decided it knows best for Marshall County—despite the objections from the local citizenry, the repeated decisions by the Board of Supervisors, and the circuit court that reviewed the matter.  But that isn't our job; that's the role of Marshall County's elected officials, since "[i]ssues of zoning are not judicial, but rather, legislative in nature."

18

*Thomas v. Bd. of Sup'rs of Panola Cnty.*, 45 So. 3d 1173, 1180 (¶20) (Miss. 2010). We should not presume to know what's best for this county; indeed, that's why our standard of review is so deferential.

¶48. So let's end at that, with what is supposed to be the lens through which we view this case: "Appellate courts are to give deference to the zoning decision of the local governing board, as the decision is to be presumed valid." *Mayor & Bd. of Aldermen, City of Ridgeland v. Est. of Lewis*, 963 So. 2d 1210, 1214 (¶9) (Miss. Ct. App. 2007). Because we discard this standard of review and answer a question not ripe for review, I cannot join the majority's decision to rewrite the zoning of Marshall County.

**CARLTON, P.J., JOINS THIS OPINION. BARNES, C.J., AND McDONALD, J., JOIN THIS OPINION IN PART.**